NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0505n.06

Case No. 21-3739

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 07, 2022
DEBORAH S. HUNT, Clerk

OUMAR AMADOU CISSE,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS


OPINION

Before: LARSEN, DAVIS, and MATHIS, Circuit Judges.

**DAVIS, Circuit Judge.** After an Immigration Judge denied Oumar Amadou Cisse asylum and related relief in 2010 and ordered him removed from the country, he sought to reopen his case eight years later based on changed country conditions. Because the Board of Immigration Appeals did not abuse its discretion in denying Cisse's motion to reopen, we **DENY** the petition for review.

**I.**

Cisse was born in Mauritania in 1972 and is of Black African descent from the Soninke minority ethnic group. He entered the United States without proper admission in February 2003 using identification documents that did not belong to him. Cisse applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") claiming that he suffered persecution in Mauritania on account of his race. More specifically, Cisse averred that he was imprisoned because of his status as a member of an ethnic minority group and that members of his family were arrested and killed by the government on that basis as well. Cisse asserted that he

feared similar persecution if he were to return to his home country. However, following a hearing in 2010, an Immigration Judge found that Cisse was not a credible witness due to "significant inconsistencies" in his testimony. The Immigration Judge also noted that Cisse's fears of future persecution were "not consistent with known country conditions" in Mauritania at the time of the merits hearing. As a result, the Immigration Judge denied Cisse's application for relief on all grounds and ordered his release to Mauritania. The Board affirmed in 2013. Cisse did not petition this court for review.

In October 2018, Cisse moved the Board to reopen his case due to "changed country conditions" in Mauritania pursuant to 8 U.S.C. § 1229a(c)(7)(C)(ii).[1] He alleged that the Mauritanian government implemented a discriminatory "census registration process" in 2011, which stripped him and other Black Mauritanians of their citizenship. According to Cisse, Mauritanian officials affirmatively "refused to recognize his citizenship." Cisse thus claimed that he was "a stateless individual." He attached fifteen exhibits to his motion to reopen. These included a personal declaration, two expert declarations, the U.S. Department of State's 2017 Human Rights Report on Mauritania (the "2017 Report"), and various other news articles and reports about the conditions in Mauritania. Notably, Cisse filed no evidence objectively showing that the Mauritanian government revoked his citizenship as he claimed. The Board ultimately denied his motion to reopen the removal proceedings in December 2018. It explained that the facts underlying Cisse's motion did not demonstrate the requisite "materially changed circumstances or

---

[1] Motions to reopen generally must be filed within 90 days of a final removal order. 8 U.S.C. § 1229a(c)(7)(C). However, in asylum cases, "[t]here is no time limit on the filing of a motion to reopen" if the motion is based on previously unavailable and material evidence of "changed country conditions." *Id.* § 1229a(c)(7)(C)(ii).

conditions" in Mauritania, but rather essentially seemed to show a continuation of the socio-political strife which gave rise to Cisse's initial asylum claim.

Cisse filed an unopposed emergency motion to stay removal in January 2019, which this court granted. He supported his emergency request with 278 pages of documentation which quietly included a curious, new piece of information: a one-page letter from the Embassy of Mauritania concerning his citizenship. The letter was issued on December 4, 2018, around the same time that the Board denied Cisse's motion to reopen. In its letter, the Embassy informed Immigrations and Customs Enforcement that it could not "verify [Cisse's] Mauritanian citizenship," and thus could not issue a travel document for him. The Embassy explained that it appeared Cisse was in fact a Senegalese or Gambian national who obtained false Mauritanian identity documents to seek asylum in the United States. Cisse brought no particular attention to this letter in his briefing before this court, though it is plainly related to his statelessness claim.

The government then moved to remand the proceedings for the Board to clarify its prior decision and further analyze Cisse's revoked citizenship claim. The motion did not reference the Embassy's letter mentioned above. This court granted the motion, finding that the Board failed to adequately consider whether "denationalization on account of a protected ground that results in statelessness is per se persecution." The court further provided that "the parties may move for leave to file supplemental briefing" on remand, and that "Cisse will be free to argue either that he established per se persecution or that the case should be remanded to the immigration judge to consider new evidence."

The Board next set a schedule for filing of "any submissions," including briefs and "other documents" on remand. The parties timely filed the same. The government's submission included some evidence not previously in the record, including the State Department's 2019 Human Rights

Report on Mauritania. Again, however, not so much as a passing reference was made to the Mauritanian Embassy's letter by either party.

The Board again denied Cisse's motion to reopen. Among other things, the Board found that Cisse failed to adduce "sufficient reliable, independent and probative evidence" evincing the changed country conditions he alleged. In particular, the Board was unpersuaded by Cisse's unsubstantiated claim that Mauritania revoked his citizenship. There was also no record evidence corroborating Cisse's claim that the Mauritanian government denationalized thousands of Black citizens en masse.

Cisse petitioned this court for review.

## II.

### A.      Standard of Review

"The decision to grant or deny a motion to reopen . . . is within the discretion of the Board." 8 C.F.R. § 1003.2(a); *see also I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992) (highlighting the Board's "broad discretion" as to such motions). To succeed on appeal, Cisse must show that the Board abused its discretion. *Gafurova v. Whitaker*, 911 F.3d 321, 325 (6th Cir. 2018); *Preçetaj v. Sessions*, 907 F.3d 453, 457 (6th Cir. 2018); *Zhang v. Mukasey,* 543 F.3d 851, 854 (6th Cir. 2008). To find such an abuse of discretion, we must conclude that the Board's decision lacked a "rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." *Gafurova*, 911 F.3d at 325.

### B.      Analysis

To prevail on a motion to reopen, petitioners must "make[] a prima facie showing that the statutory requirements for the underlying relief have been met." *Alizoti v. Gonzales*, 477 F.3d 448, 451–52 (6th Cir. 2007) (citing *Yousif v. I.N.S.*, 794 F.2d 236, 241 (6th Cir. 1986)). Here, Cisse

sought to reopen his asylum proceedings based on "changed country conditions." 8 U.S.C. § 1229a(c)(7)(C)(ii). The changed country condition on which Cisse premises his claim is that Mauritania implemented a discriminatory census registration process in 2011 which rendered him and many other Black Mauritanians stateless. Having reviewed the administrative record, we find that the Board did not abuse its discretion in denying Cisse's motion to reopen.

First, the Board reasonably concluded that no evidence demonstrated that Cisse was targeted for denationalization by his home country. Cisse at times claimed he "believed" Mauritania revoked his citizenship, and at others he appeared certain this was true. For instance, he explained that Mauritania "<u>has refused</u> to recognize his citizenship" and that he "ha[d] no hope of regaining" it. Yet, he provided the Board no corroborating evidence – such as evidence showing when or under what circumstances Mauritania "has refused" to recognize him as a citizen. Nor did he identify "any efforts [he made] to obtain a passport or any other form of identity document from the Mauritanian Embassy and if not, why not." It was not an abuse of discretion for the Board to discredit these unsubstantiated claims.

Next, the Board found that the record lacked any objective evidence showing that Mauritania executed a large-scale operation to denationalize racial and ethnic minorities through the 2011 census registration process. One of Cisse's key pieces of evidence on this point was the State Department's 2017 Report. The Board correctly noted that this court recently analyzed the 2017 Report under closely analogous circumstances in *Thiam v. Barr*, 787 F. App'x 327 (6th Cir. 2019). In *Thiam*, a Black Mauritanian man alleged he was denationalized via the country's 2011 census registration process; he filed similar evidence in support of his claims, including the State Department's 2017 Report and declarations from the same experts that are involved in this case; and he appealed the Board's denial of his motion to reopen. *See generally Thiam*, 787 F. App'x

327. The court observed that "State Department country reports 'are generally the best source of information on conditions in foreign nations.'" *Id.* at 329 (quoting *Sterkaj v. Gonzales*, 439 F.3d 273, 276 (6th Cir. 2006)); *see also Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012) (citing *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004)) (stating same). That said, the 2017 Report provided <u>no support</u> to the petitioner's claims in *Thiam*. We explained:

> The report says that Mauritanian law confers citizenship on those, like [Petitioner], who were born in the country, and that the Mauritanian Constitution provides a right of repatriation that the government "generally respect[s]." [By contrast,] <u>the report doesn't say anything about the 2011 census, let alone anything about the alleged citizenship stripping that took place during it. That omission is particularly glaring given that the same report has a section about "stateless persons" that discusses a different population of refugees whom the government rendered stateless.</u> If the 2011 census had caused a "material" change in conditions in Mauritania for Black Mauritanians, one could fairly expect the State Department to mention it, particularly since it identifies an equivalent problem for another group.

*Thiam*, 787 F. App'x at 329 (emphasis added). This analysis of the 2017 Report is well-reasoned and applies with equal force to Cisse's claims. A nationwide effort to render thousands of minority members stateless in one fell swoop – doubtlessly an "extreme sanction," *Stserba v. Holder*, 646 F.3d 964, 974 (6th Cir. 2011) – would not go unnoticed by the State Department's official reporting. The Board appropriately followed *Thiam* in deciding that the State Department's 2017 Report offers no support to Cisse's claims.

The Board also afforded "limited weight" to Cisse's expert declarations. For example, it found expert Biram Dah Abeid's declaration unpersuasive on grounds that it was contradicted by the State Department's 2017 Report and that it lacked sufficient specificity as to the alleged denationalization campaign. The Board also observed that insofar as Christopher Hemmig's declaration referred to "controversy and protest among Black Mauritanians" flowing from their "targeted denationalization and stripping of citizenship" in the 2011 census, Hemmig's "conclusions are not substantiated or corroborated by the article he cites for support" on this point.

6

The article cited speaks only to the "major <u>fear</u> . . . that [the 2011 census] <u>might</u> be used to deprive people of their nationality," and states only that denationalization is "an entirely <u>possible</u> outcome" therefrom. Sebastian Kohn, *Fear and Statelessness in Mauritania*, OPEN SOC'Y FOUND. (Oct. 2, 2011), https://www.justiceinitiative.org/voices/fear-and-statelessness-mauritania (emphasis added). Hemmig's declaration otherwise does not address the 2011 census. The Board thus permissibly found that Cisse's expert evidence had limited probative value in this case and could not overcome the State Department's 2017 Report.

On this record, we cannot conclude that the Board abused its discretion in finding that Cisse did not present a *prima facie* case for relief. The Board's decision contained a "rational explanation" in explaining that Cisse failed to establish changed country conditions. *Gafurova*, 911 F.3d at 325.

Cisse, nevertheless, argues that a number of errors in the proceedings below warrant granting his petition on appeal. We address each of his arguments in turn.

First, Cisse challenges the Board's credibility finding. The Board began its analysis of his denationalization claims by stating: "In assessing whether [Cisse's] statements in support of the motion are sufficient to establish *prima facie* eligibility for relief, we view [his] statements [regarding changed country conditions] in light of [his] history of not being a credible witness." Cisse argues that the Board misapplied its own precedent in *Matter of F-S-N-*, 28 I. & N. Dec. 1 (B.I.A. 2020) when it considered a previous adverse credibility determination in analyzing Cisse's denationalization claim. Cisse is correct. In *Matter of F-S-N-*, the Board held that "to prevail on a motion to reopen alleging changed country conditions where the persecution claim was previously denied based on an adverse credibility finding . . . the [movant] must <u>either</u> [1] overcome the prior determination <u>or</u> [2] show that the new claim is independent of the evidence

7

that was found to be not credible." *Id.* at 3 (emphasis added). Cisse's motion to reopen fell within the latter category of cases. His motion newly alleged that Mauritania performed a mass denationalization resulting in thousands of stateless persons – which is an "extreme sanction" and "may be per se persecution when it occurs on account of a protected status such as ethnicity." *Stserba*, 646 F.3d at 974. This claim was independent of the evidence previously discredited by the Immigration Judge, which pertained to other forms of racially motivated persecution. *Cf. Dieng v. Barr*, 947 F.3d 956, 961–62 (6th Cir. 2020) (quoting *Bi Feng Liu v. Holder*, 560 F.3d 485, 491 (6th Cir. 2009)) ("In determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify reopening, the [Board] compares the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below."). Nonetheless, to the extent the Board erred in its credibility finding, the error was harmless. The Board repeatedly called attention to the absence of <u>any</u> record evidence corroborating Cisse's allegations[2] – and further relied on the 2017 Report, which greatly undermined Cisse's claims. It was within the Board's discretion to deny the motion on this ground regardless of the credibility finding. This is particularly so given the "heavy burden" Cisse bears at this stage to "offer reasonably specific information showing a real threat of individual persecution" rather than mere speculation as to the future. *Harchenko v. I.N.S.*, 379 F.3d 405, 410 (6th Cir. 2004). Therefore, the Board's decision cannot be reversed on this basis.

---

[2] *See* Administrative Record at 4 ("[W]e do not consider [Cisse's] uncorroborated statements regarding his citizenship status as sufficient to warrant reopening."); *id.* at 5 ("[Cisse] does not state whether he made any efforts to obtain a passport or any other form of identity document from the Mauritanian Embassy, and if not, why not."); *id.* at 5–6 (citing the "lack of any objective country conditions evidence supporting [Cisse's] contention"); *id.* at 7 (stating that the "evidence is not sufficient to establish a material change in circumstances or country conditions" and Cisse "has not established that the Mauritanian government revoked his citizenship, leaving him stateless").

Cisse's second argument fails for much the same reason. Cisse contends that the Board committed legal error by considering new evidence that the government wrongly filed on remand. Cisse's argument derives from this court's September 18, 2019, remand order, which narrowly permitted (1) the parties to "move for leave to file supplemental briefing," not file new evidence, and (2) Cisse "to argue either that he established per se persecution or that the case should be remanded to the *immigration judge* to consider new evidence." To the extent the Board may have erred in this respect,[3] any error was harmless. Again, the Board's decision was solidly grounded in the State Department's 2017 Report and Cisse's lack of corroborating evidence. As such, the outcome here would have been the same whether the Board reviewed the government's new evidence or not.

Finally, there is the issue of the Mauritanian Embassy's letter. The letter declares that Cisse is not a citizen of Mauritania, and thus appears relevant to Cisse's denationalization claims. Cisse argues that the letter provides grounds for remand for further factfinding and "so that the [Board] can properly consider [it] in the first instance." This we cannot do. The law precludes courts of appeals from remanding simply to direct further factfinding. *See* 8 U.S.C. § 1252(a)(1) (providing that courts "may not order the taking of additional evidence"); *Nesterov v. Dep't of Homeland Sec.*, 335 F. App'x 590, 593 (6th Cir. 2009) (explaining "there is no statutory basis for this court to remand where a petitioner seeks to only supplement the record"); *Fang Huang v. Mukasey*, 523 F.3d 640, 656 (6th Cir. 2008) (quoting *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 264–65 (2d Cir. 2007)) (noting that Congress "explicitly revoked our authority to remand to the

---

[3] The Board's decision appears to cite two new pieces of evidence filed by the government on remand from this court. First, the decision refers to a 2012 news article stating that Mauritania repatriated over 24,000 refugees between 2008 and 2012. *See* Administrative Record at 6. Second, the Board refers to a few facts from the State Department's 2019 Human Rights Report on Mauritania, including that Mauritania's constitution designates Soninke as one of its national languages. *See id.*

[Board] for the taking of additional evidence") (internal quotation marks omitted). Cisse's request is therefore denied. That said, this decision does not bar Cisse from filing a renewed motion to reopen before the Board. *See, e.g.*, *Ndayisaba v. Holder*, 457 F. App'x 552, 561 (6th Cir. 2012) ("[Petitioner] is not foreclosed from presenting the new information in support of his application for relief; it is just that *we* cannot consider it or order the [Board] to do so. He must follow the proper procedure for presenting the evidence [as set forth by statute].").

We pause to address Cisse's remaining arguments on this point. To begin, Cisse strongly objects to the government's failure to submit the letter despite filing other new evidence with the Board. Without addressing the propriety of the government's course of action in this respect, we emphasize that *Cisse* bore the burden of proof on his motion to reopen. *Harchenko*, 379 F.3d at 410. And indeed, Cisse himself was in possession of the evidence at issue and could have apprised the Board of it on remand. However, Cisse claims that he did not provide the letter to the Board given the text of this court's September 18, 2019, remand order – which, he reiterates, appeared to preclude the parties from submitting new evidence to the Board.[4] Yet even the strictest reading of the remand order does not suggest that Cisse was so limited. The court made clear that Cisse had a new opportunity to go before the Board and request additional factfinding by the Immigration Judge. *See* Administrative Record at 182 ("On remand . . . Cisse will be free to argue . . . that the case should be remanded to the immigration judge to consider new evidence."). If nothing else, this should have prompted Cisse to leverage any evidence he could to argue in favor of supplementing the record. Cisse neglected to so much as *mention* the Embassy's letter in his briefing on remand, however, despite its apparent significance to the issue at hand. In fact, the

---

[4] Note that the Embassy's letter could not be filed with the Board with Cisse's initial motion to reopen, because it was issued after briefing concluded.

Board denied Cisse's motion in part because he "d[id] not state whether he made any efforts to obtain a passport or any other form of identity document from the Mauritanian Embassy, and if not, why not." This suggests that the letter indeed might have made a difference in this case had the Board been advised of it when Cisse had the chance.

### III. CONCLUSION

We DENY the petition for review.