<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 17a0170n.06

Case Nos. 15-4313/16-3207

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MARAS DJOKIC, | ) | **FILED**<br>Mar 21, 2017<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) | ON PETITION FOR REVIEW OF |
|  | ) | AN ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
|  | ) |  |
| JEFF B. SESSIONS, U.S. Attorney General, | ) |  |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |
|  | ) |  |

BEFORE: BOGGS, SILER, and MOORE, Circuit Judges.

**SILER**, Circuit Judge. Maras Djokic petitions for review of multiple decisions by the Board of Immigration Appeals ("Board"). For the following reasons, we **deny** the petition.

## I.     FACTUAL AND PROCEDURAL HISTORY

Djokic is a native of Yugoslavia and a citizen of Montenegro. He first arrived in the United States in 1985 without inspection. He conceded that he was deportable and applied for suspension of deportation. As is relevant to this case, in his application, he stated that he had six siblings. When he did not appear for his scheduled deportation hearing, he was ordered to be deported in abstentia.

After multiple failed attempts to deport him, the Board sua sponte reopened his case due to ineffective assistance provided by his former attorney. The Board then remanded the case to an Immigration Judge ("IJ") to allow Djokic to seek relief.

In 2011, Djokic filed an updated application for suspension of deportation, in which he claimed to have only two siblings. He also stated that he had two children who were United States citizens, his father was a naturalized citizen, and his mother was a lawful permanent resident. The IJ held three merits hearings on the application. As part of the process for suspension of deportation, Djokic had to show good moral character and extreme hardship were he to be deported. He made three arguments in support of hardship: (1) his family was involved in a blood feud in Montenegro; (2) his removal would harm his parents because he was the only family member assisting them with living expenses and with attending medical appointments; and (3) his removal would cause hardship to his citizen children.

At the first hearing, during cross-examination on the topic of hardship to his parents, Djokic gradually admitted to having more than the two siblings disclosed on the updated application. After testifying that he had three siblings, he was impeached with his initial suspension application, at which point Djokic began admitting additional siblings, one by one. The IJ asked why Djokic did not initially list all his siblings, and he responded that he was not on good terms with all of them and he was not sure whether they were permanent residents or United States citizens. After Djokic admitted to having a brother named Martin, he testified that he did not know where Martin lived. His father, mother, and sister also testified that they did not know Martin's whereabouts.

At the second hearing, Djokic's attorney stated that Martin was present in the United States and in removal proceedings, and Djokic's son testified that Martin lived with Djokic's

parents and had been living with them at the time of the first hearing. Martin testified at the third hearing that he had been living with his parents in 2011, and that he, not Djokic, provided the majority of assistance to his parents. At this hearing, Djokic and his family also admitted to lying under oath about Djokic's siblings, particularly Martin, to avoid having his siblings arrested by immigration officials. His father testified that the witnesses had met in advance and agreed to lie in court about the family members. As to the claim about a blood feud, testimony and exhibits showed that the father recently returned to Montenegro despite the family's claim of fear, and documents showed that the family had lived at one place in Montenegro, rather than constantly moving around as they had claimed.

To be granted suspension of deportation, Djokic needed to establish that he was a person of good moral character.[1] Because Djokic intentionally lied about Martin's location, Djokic's assistance to his parents, moving from place to place to avoid a blood feud, and the help his children may receive in the United States, the IJ found that Djokic "ipso facto cannot demonstrate the requisite good moral character." The IJ denied the application and ordered that Djokic be deported.

Djokic then appealed to the Board. He argued that he and the other witnesses lied about Martin to protect Martin rather than to obtain an immigration benefit and that the false testimony was timely retracted. While that appeal was pending, Djokic filed a motion to remand, in which he asked the Board to allow him to seek adjustment of status because a visa petition filed by his sister on his behalf had become current. In a decision written by one Board member, the Board dismissed the appeal and denied the motion to remand. The Board reviewed the IJ's decision and dismissed the appeal "for the reasons stated therein." Regarding the motion to remand, the

---

[1] "[O]ne who has given false testimony for the purpose of obtaining any benefits under this chapter" shall be found not to possess such character. 8 U.S.C. § 1101(f)(6).

Board stated that it "will be denied in the exercise of discretion." It found that Djokic failed even to address the discretionary component of the application for adjustment of status in the motion to remand, and "has not demonstrated that he merits adjustment of status in the exercise of discretion," particularly in light of his role in a conspiracy to provide false testimony.

While this petition for review (No. 15-4313) was pending, Djokic filed a motion to reconsider with the Board in 2015, in which he raised arguments concerning the denial of his motion to remand and the use of a single-member panel in making that determination. The Board considered the motion as both a motion for reconsideration and a motion to reopen, and it denied the motion. Djokic then filed a petition for review of that decision, which is now before us as No. 16-3207.

## II.     DISCUSSION

Djokic's arguments can be condensed into four allegations of error by the Board: (1) finding that Djokic did not have the requisite good moral character for suspension of deportation; (2) denial of the motion to remand and the motion to reopen/reconsider based on the decision to deny adjustment of status in an exercise of discretion; (3) not referring the motion to reopen/reconsider to a three-member panel; and (4) finding that it was barred from reviewing Djokic's motion to reopen/reconsider challenge to the use of a single-member panel in the determination of his motion to remand.

### A.  Did the Board err in determining a lack of good moral character?

#### 1.  Standard of review

When addressing the appeal of the application for suspension of deportation, the Board reviewed the IJ's decision and affirmed for the reasons stated therein, as well as adding its own comments on the merits. Therefore, we review both the IJ's and the Board's decision. *See*

*Lateef v. Holder*, 683 F.3d 275, 279 (6th Cir. 2012). The agency's fact finding is reviewed under the substantial-evidence standard and cannot be overturned simply because this court would have reached a different answer. *Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009).

## 2. Analysis

The suspension of deportation statute that governs Djokic's case provides:

> As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien . . . who applies to the Attorney General for suspension of deportation and—
>> (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . .

8 U.S.C. § 1254(a)(1); INA § 244(a)(1).[2]

The issue in this case is whether there was an error in determining "good moral character." The statute does not define good moral character, but it enumerates certain actions that necessarily disqualify an individual from showing good moral character. 8 U.S.C. § 1101(f). One of these categories is a person "who has given false testimony for the purpose of obtaining any benefits under this chapter." *Id*. § 1101 (f)(6). The Supreme Court has interpreted this to require that a false statement be given under oath. *Kungys v. United States*, 485 U.S. 759, 780 (1988). The Court likewise held that a person is to be categorized as having "bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Id*.

---

[2] Although repealed in 1996, this statute continues to govern Djokic's case.

Djokic challenges the finding that he gave "false testimony to be granted suspension of deportation" such that he "ipso facto cannot demonstrate the requisite good moral character." He claims that because he requested his brother Martin be subpoenaed to testify, his false testimony was timely retracted, and the Board and IJ did not discuss the retraction. *See Matter of M-*, 9 I. & N. Dec. 118, 119 (BIA 1960) (noting an exception to a false-testimony finding when an applicant seeking relief from deportation gives false testimony under oath and then "voluntarily and without prior exposure of his false testimony comes forward and corrects his testimony"). However, the Board did consider this claim and rejected it. Additionally, Djokic never retracted his false testimony that he was the only source of support for his parents, and he did not immediately retract his testimony about the number of siblings he had. The testimony by Martin came only after Djokic and his family had lied about Martin's whereabouts and the lie had been exposed, and it therefore does not count as a timely retraction.

Djokic also argues that the IJ and Board erred because the false testimony was not given for the purpose of obtaining an immigration benefit but was to protect his family. But the false testimony about Djokic's being the only person who could help his aging parents was made before any testimony about his siblings and thus before any need to protect them arose. The IJ additionally found that Djokic made false statements about the blood feud. These statements were made to show hardship and gain an immigration benefit. Djokic does not even challenge the IJ's conclusions, and the Board's acceptance of the conclusions, about these false statements.

Finally, Djokic argues that the IJ erred because the false-testimony provision punishes only oral statements, not written statements. While Djokic is correct in that assertion, *see Kungys*, 485 U.S. at 780, that does not help his case. The IJ did not rely only on Djokic's

application listing his siblings when making his decision. The decision was based on numerous examples of Djokic's testimony in his deportation proceeding.

Accordingly, there was substantial evidence from which the IJ and Board could find that Djokic provided false testimony in order to gain an immigration benefit.

**B. Did the Board err in denying the motion to remand for adjustment of status and the corresponding motion to reopen/reconsider?**

During Djokic's appeal of the suspension-of-deportation ruling, he filed a motion to remand to the IJ so that he could seek adjustment of status, as he alleged a visa petition filed by his sister had become current. The Board denied the motion in an exercise of discretion. It noted that Djokic had failed to address the discretionary component of the application for adjustment of status in his motion to remand. Djokic then filed a motion to reconsider, which the Board also considered as a motion to reopen to present additional evidence on why he should receive a favorable grant of discretion. Djokic additionally requested that a three-member panel hear his case. The Board found that it did not err in its first decision and that in light of all the evidence, including the additional documents, Djokic still did not merit discretionary relief, i.e., adjustment of status. It also denied the request for three-member review because the case did not fall into any of the categories warranting such review. Djokic now argues that the Board erred in making that decision.

The first question is whether we have jurisdiction to review this challenge. While the decision to adjust status is discretionary and not subject to judicial review, *Pilica v. Ashcroft*, 388 F.3d 941, 945–46 (6th Cir. 2004), Djokic is challenging the ruling on the other motions, those to remand and to allow him to apply for adjustment of status and to reopen/reconsider the denial of that motion. The government agrees that courts can generally review motions to reopen but argues that we lack jurisdiction here because the Board said it would deny Djokic's request

for relief in an exercise of discretion, and that is a "judgment regarding the granting of relief," over which we lack jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(B).

Djokic appears to argue that jurisdiction exists because he presents a question of law, which would give this court jurisdiction regardless of the underlying request for relief. *See* 8 U.S.C. § 1252(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."). He claims that there was legal error because the Board overlooked evidence, and he cites several unpublished cases and cases from other circuits dealing with factual determinations in different immigration contexts. However, we have not held that a serious mischaracterization of fact raises a question of law[3] nor have we decided whether jurisdiction exists to review a motion to reopen/reconsider when the appeal goes to the underlying claim, a claim that we lack jurisdiction to review. But even assuming without deciding that jurisdiction exists, Djokic's argument is meritless.

Djokic argues that the Board failed to balance positive and negative factors, wrongly relied on a credibility determination, and overlooked exhibits that were attached to the motion and which he claims established discretionary fitness for lawful-permanent-resident status. An abuse-of-discretion standard of review applies to all three motions. *See INS v. Doherty*, 502 U.S. 314, 324 (1992); *Yeremin v. Holder*, 738 F.3d 708, 718 (6th Cir. 2013); *Pilica*, 388 F.3d at 948.

In this case, the Board stated that "the respondent's motion to remand will be denied in the exercise of discretion." The Board cited the conspiracy to provide false testimony as a

---

[3] A review of Djokic's argument and the Board's denials suggests that his challenge is nothing more than a challenge to the weight of evidence and the balancing process the Board performed when making its determination rather than a legal claim.

"highly adverse discretionary factor" and said that Djokic failed to support the motion with evidence to show his discretionary fitness for lawful-permanent-resident status. It ultimately held that "on the record before us, therefore, the respondent has not established his discretionary fitness for lawful permanent resident alien status." Despite what Djokic argues, we do not assume those are empty words and that the Board did not consult the record when making its determination.

In the motion to reconsider/reopen, Djokic pointed to a long list of evidence and exhibits in an attempt to show discretionary fitness for lawful-permanent-resident status. The Board denied the motion to reconsider, finding that it did not err previously, particularly in light of Djokic's false testimony at his hearing and the IJ's thorough decision on the issue. As to the motion to reopen, the Board denied it saying, "[T]he supporting documents-as well as the evidence in the record-do not change our view that the respondent does not merit discretionary relief." It went on to say that the "negative considerations-particularly the respondent's false hearing testimony-outweigh the positive factors." These decisions show that the Board did review the record, and found that there were positive and negative factors, but that the negative outweighed the positive.

Djokic also challenges the Board's reliance on a credibility finding. The Board's reliance, however, was not based solely on a credibility determination by the IJ but on unchallenged testimony about Djokic's agreement in advance to testify falsely under oath. The Board has discretion to decide what testimony to credit and discredit, and Djokic did not argue that such testimony should not be credited. Furthermore, the Board may deny motions to reopen even if the petitioner makes out a prima facie case. *See* C.F.R. § 1003.2(a). Djokic thus fails to present a successful challenge to the Board's decision.

**C. Did the Board err in using a single-member panel to decide Djokic's motions?**

The same board member decided both Djokic's first appeal and motion to remand, and the motion to reopen/reconsider. Djokic challenges this use of a single-member panel and argues that a three-member panel should have been used on the motion to reopen/reconsider. The relevant regulation provides that

> (6) Panel decisions. Cases may only be assigned for review by a three-member panel if the case presents one of these circumstances:
>> (i) The need to settle inconsistencies among the rulings of different immigration judges;
>> (ii) The need to establish a precedent construing the meaning of laws, regulations, or procedures;
>> (iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents;
>> (iv) The need to resolve a case or controversy of major national import;
>> (v) The need to review a clearly erroneous factual determination by an immigration judge; or
>> (vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).

8 C.F.R. § 1003.1(e)(6). Additionally, as to motions to reopen/reconsider before the Board, "[a]ny motion for reconsideration or reopening of a decision issued by a single Board member will be referred to the screening panel for disposition by a single Board member, unless the screening panel member determines, in the exercise of judgment, that the motion for reconsideration or reopening should be assigned to a three-member panel under the standards of § 1003.1(e)(6)." *Id.* § 1003.2(i).

Djokic argues that his motion to reconsider/reopen should have been referred to a three-member panel because the Board's single-member decision involved clearly erroneous factual determinations and was not in conformity with existing law. He also claims that there was a lack of due process because the same Board member who denied his motion to remand denied his

motion to reopen/reconsider, and he brings a challenge based on the Administrative Procedure Act ("APA"). We have yet to decide if we have jurisdiction to review the Board's internal assignment of cases to three-member panels in the context of motions to reopen/reconsider; however, assuming without deciding jurisdiction, Djokic fails to make a successful argument. *See Nabhani v. Holder*, 382 F. App'x 487, 491 (6th Cir. 2010) (assuming without deciding jurisdiction exists to review the Board's use of a single-member panel under the APA).

As discussed above in the context of his other arguments, Djokic has failed to show that there were clearly erroneous factual determinations, overlooked facts, or a decision not in conformity with the law. The Board's decisions show that it considered all the evidence of record when evaluating his claim and chose to place particular weight on his agreement to testify falsely under oath. For similar reasons, Djokic also fails to show that the Board violated any of the APA standards that he cites. Furthermore, due process does not require referral to a three-member panel. *See Tapia-Martinez v. Gonzales*, 482 F.3d 417, 425 (6th Cir. 2007) ("[T]he regulation does not guarantee a three-member BIA panel as a matter of right."). Moreover, even if one of the six factors listed in the regulation is present, the Board has discretion not to use a three-member panel. *See Koussan v. Holder*, 556 F.3d 403, 415 (6th Cir. 2009) *abrogated on other grounds by Judulang v. Holder*, 132 S. Ct. 476, 490 (2011) ("[U]nder the plain language of [8 C.F.R. § 1003.1(e)], even if one of the six criteria for three-member panel review were presented in a particular case, the Board need not empanel a multi-member decision-making body but may do so in its discretion."). For these reasons, we find that Djokic fails to show that the Board erred in using a single-member panel.

**D. Did the Board err when it found that it was barred from reviewing Djokic's challenge to the use of a single-member panel when deciding his motion to reopen/reconsider?**

Djokic also argues that the Board erred in its second decision by finding that his challenge to the number of Board members was barred by 8 C.F.R. § 1003.2(b)(3).[4] That regulation states that "[a] motion to reconsider based solely on an argument that the case should not have been affirmed without opinion by a single Board Member, or by a three–Member panel, is barred." Djokic claims that because the Board did not issue an affirmance without opinion, the Board clearly erred when it concluded that § 1003.2(b)(3) barred its review of the assignment to a single- versus three-member panel.

Despite Djokic's argument that the regulation applies only to summary affirmances by single-member panels, the Board's precedent provides: "A motion to reconsider is also barred if it is filed solely to challenge a decision to affirm without opinion by a single Board Member, or to adjudicate the case without a panel of three Board Members." *Matter of O-S-G-*, 24 I. & N. Dec. 56, 57 (BIA 2006). The preamble also suggests a similar reading of the regulation. *See* Board of Immigration Appeals: Streamlining, 63 FR 49043, 44 ("The proposed rule also amends the regulation regarding motions to reconsider to state that a motion to reconsider based solely on the argument that the case should have been heard by a three-Member panel, or otherwise should not have been summarily affirmed without a full opinion, is barred."). As both parties agree, the purpose of this regulation is to streamline immigration appeals and filings, and the regulation bars motions to reconsider for challenges to both summary affirmances and single-member panels, two key ways in which the Board streamlines its docket. Furthermore, as

---

[4] This argument is distinct from his previous claim, as he is not challenging the use of a single-member panel. Instead, he claims that his motion to reconsider raised a challenge regarding the use of a single-member panel, and the Board erred in its review of that claim.

discussed above, there is no constitutional or due process right to review by a three-member panel, and the decision of how to assign cases is discretionary.

**PETITION FOR REVIEW IS DENIED.**