RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GULNARA GAFUROVA,

*Petitioner*,

*v.*

No. 17-3712

MATTHEW G. WHITAKER, Acting Attorney General,

*Respondent*.

On Petition for Review from the Board of Immigration Appeals;
No. A 098-415-313.

Decided and Filed: December 18, 2018

Before: GILMAN, KETHLEDGE, and BUSH, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** George P. Mann, Maris J. Liss, GEORGE P. MANN AND ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Rachel L. Browning, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

JOHN K. BUSH, Circuit Judge. Gulnara Gafurova petitions for review of the order of the Board of Immigration Appeals ("Board" or "BIA") denying her motion to reopen her removal proceeding. At issue are the Board's determinations (1) that Gafurova did not present new evidence of changed country conditions in Uzbekistan; (2) that *Yousif v. Lynch*, 796 F.3d 622 (6th Cir. 2015), is not analogous to this case; (3) that because Gafurova did not seek to place under seal an opinion from the United States Court of Appeals for the Second Circuit affirming

the denial of her asylum application, she may not use the publication of that opinion as a reason for reopening her removal proceeding; and (4) that Gafurova's present motion to reopen her removal proceeding would be decided by one member, as opposed to a three-member panel, of the Board. Because the Board applied the proper legal standards, substantial evidence supports its findings of fact, and the Board adhered to its relevant procedural rules in determining that a single member would decide the motion to reopen the removal proceeding, we **DENY** the petition for review.

I.

Gafurova is a native of the former Soviet Union and a citizen of Uzbekistan. She entered the United States on June 24, 2003, as a nonimmigrant visitor with authorization to remain for a temporary period, until December 21, 2003. She remained in the United States without authorization and filed an application for Asylum and Withholding of Removal on June 14, 2004. Three months later, the Department of Homeland Security commenced removal proceedings against Gafurova, and during those proceedings, she conceded the charge of removability.

On May 4, 2005, the Immigration Judge denied Gafurova's asylum application and ordered her removal to Uzbekistan. Gafurova appealed that decision to the Board, which remanded the case to the Immigration Judge on January 12, 2007. On remand, the Immigration Judge again denied Gafurova's asylum application and determined that it was frivolous. Gafurova appealed the Immigration Judge's decision, and on October 26, 2010, the Board denied Gafurova's appeal but reversed the Immigration Judge's frivolity determination. Gafurova subsequently filed a petition with the Second Circuit to review the Board's decision dated October 26, 2010. The Second Circuit denied that petition. *See Gafurova v. Holder*, 448 F. App'x 139, 140–41 (2d Cir. 2011).

On January 21, 2011, Gafurova moved to reopen her removal proceeding with the Board because of a pending visa petition filed on her behalf by her husband. The Board granted

Gafurova's motion to reopen and remanded her case to the Immigration Judge on June 23, 2011.**[1]** On July 14, 2011, Gafurova filed an application for adjustment of status.

On February 6, 2014, the Immigration Judge denied Gafurova's application for adjustment of status because she had previously filed a frivolous asylum application and she was ineligible for relief under the applicable statutes and regulations. She appealed the Immigration Judge's determination and, on November 30, 2015, the Board granted her appeal. The Board determined that the Immigration Judge erroneously concluded that the asylum application was frivolous and remanded the case to the Immigration Judge to reconsider whether any additional bars to relief applied to her case.

After remand, the Department of Homeland Security submitted evidence that Gafurova's January 2011 visa petition was revoked and she was no longer eligible to seek an adjustment of status. Soon after, Gafurova moved to change venue to New York so that she could file a second asylum application. Gafurova argued two bases for her second asylum application: (1) she converted to Christianity in 2011; and (2) she would be viewed as a traitor in Uzbekistan because information is publicly available that she filed for asylum in the United States. *See, e.g.*, *Gafurova*, 448 F. App'x at 140–41.

On January 27, 2016, the Immigration Judge denied Gafurova's motion to change venue, found her statutorily barred from filing a second asylum application, and ordered her to be removed to Uzbekistan. Gafurova filed an appeal of the Immigration Judge's decision, and the Board dismissed that appeal in a final written decision on November 10, 2016. Gafurova timely filed a petition with this court to review the Board's decision dated November 10, 2016.

While Gafurova's petition was pending before our court, Gafurova again moved to reopen her removal proceeding, on February 8, 2017. It is the Board's determination of this motion that is the subject of our review. In support of her second motion to reopen her removal proceeding and on reply, Gafurova argued (1) "changed circumstances in Uzbekistan since the [Immigration Judge] denied Ms. Gafurova's request for a hearing and her motion to file a

---

**[1]**On remand, the Immigration Judge in New York granted Gafurova's motion to change venue to Cleveland, Ohio.

second asylum application;" and (2) "new law pertaining to asylum from the [6th] Circuit Court of Appeals regarding applications for asylum based solely upon 'well-founded fear' of prospective, future persecution." A.R. at 85. To support her argument of alleged changed circumstances in Uzbekistan, Gafurova presented evidence that asylum-seekers are regularly tortured in Uzbekistan.

Gafurova also argued that *Yousif v. Lynch*, 796 F.3d 622, required remand of her asylum case and that there was a "discretionary factor favoring granting the motion to reopen" because the Government breached its duty of confidentiality when the Second Circuit published its summary opinion. Lastly, Gafurova requested that a three-member panel decide her motion.

On June 6, 2017, the Board, acting through a single member, denied Gafurova's motion to reopen her removal proceeding. The Board ruled that Gafurova failed to provide new evidence of changed country conditions in Uzbekistan because she provided "no sufficient explanation that these are new facts since May 2013 [that] could not have been discovered or presented at her previous hearing." A.R. at 4–5. The Board also concluded that "the public disclosure of the decision in her case by the Second Circuit" did not "violate[ ] the asylum confidentiality within the meaning of the regulations" and determined that Gafurova's motion did not warrant a remand in view of *Yousif* because the facts of that case were readily distinguishable from Gafurova's circumstances. *Id.* And lastly, the Board summarily denied Gafurova's request for a three-member panel.

Gafurova's timely petition to this court followed.

II.

A.      Standard of Review

We review the Board's denial of a motion to reopen immigration proceedings for abuse of discretion. *Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018) (citing *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007)). We will find an abuse of discretion if the Board's denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination

against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (citation omitted). In determining whether the Board abused its discretion, we look only at "the basis articulated in the decision and [we] may not assume that the Board considered factors that it failed to mention in its opinion." *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004). We may not reverse simply because we "would have decided the case differently." *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009). Instead, we reverse only if the evidence compels a contrary conclusion. *Id.* Further, all "[l]egal issues are reviewed de novo." *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004).

B.    Discussion

Motions to reopen removal proceedings are often "disfavored" in view of the "strong public interest in the finality of removal orders." *Trujillo Diaz*, 880 F.3d at 249. As the Supreme Court has noted, "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *INS v. Wang*, 450 U.S. 139, 143 n.5 (1981). Thus, "[t]he party filing a motion to reopen bears a heavy burden." *Harchenko*, 379 F.3d at 410.

Under the applicable statutory and regulatory scheme, motions to reopen are subject to temporal and numerical limits. *See* 8 U.S.C § 1229a(c)(7)(A), (C); 8 C.F.R. § 1003.2(c). An asylum applicant is limited to one motion to reopen. 8 C.F.R. § 1003.2(c)(2). There is, however, an exception to this numerical requirement for motions "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(A), (C); 8 C.F.R. § 1003.2(c)(3). Because this is Gafurova's second motion to reopen, it is subject to the exception for changed country conditions.

The Supreme Court has identified "at least three independent grounds on which the BIA might deny a motion to reopen—failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of

relief which he sought." *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008) (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)). When the Board denies relief on a particular ground, our review is limited to that ground. *See Trujillo Diaz*, 880 F.3d at 249; *Daneshvar*, 355 F.3d at 626.

The Board denied Gafurova's motion to reopen because she failed to present new evidence of changed circumstances in Uzbekistan to establish a prima facie case for any of the relief she sought: asylum, withholding of removal under the Immigration and Nationality Act ("INA"), or withholding of removal under the Convention Against Torture. As explained below, we find that the Board did not abuse its discretion in reaching this conclusion.

Under 8 C.F.R. § 1003.2(c)(1), a motion to reopen must offer evidence that is "material and was not available and could not have been discovered or presented at the previous hearing." A "motion to reopen is properly denied where the motion does not introduce previously unavailable material evidence." *Sunarto v. Mukasey*, 306 F. App'x 957, 962 (6th Cir. 2009) (citing *INS v. Abudu*, 485 U.S. 94, 97–98 (1988)). The motion to reopen "based on changed country conditions [evidence] cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Harchenko*, 379 F.3d at 410 (internal quotation marks and citation omitted). When the changed-country-conditions evidence fails "to demonstrate the 'individualized' fear of persecution required for asylum," the asylum applicant fails to meet her burden to reopen her removal proceedings. *See id.* (holding that Board did not abuse its discretion when changed-country-conditions evidence did not show how the changes would specifically affect asylum applicant).

The parties agree that Gafurova would have presented new evidence if the disputed evidence—exhibits F through J in the administrative record—could not have been discovered or presented before her May 2013 hearing. Upon review of the Board's determination and the parties' arguments, we conclude that the Board did not abuse its discretion when it determined that these exhibits did not constitute new evidence demonstrating a material change in country conditions that showed an individualized fear of persecution required for asylum.

Gafurova argues that the new evidence she presented in her motion to reopen evinces a material change in country conditions because it demonstrates that the Government of Uzbekistan now persecutes all asylum-seekers. According to Gafurova, the pre-May 2013 evidence shows that Uzbekistan's Government previously persecuted only those asylum-seekers who were linked with Islamic "extremism or militancy." In support of her argument that there was new evidence of a material change in country conditions, Gafurova identified documents indicating that the Uzbekistan Government fabricated the extremism and militancy charges to retrieve asylum-seekers in other nations and then torture them. Even assuming that this evidence shows a material change in the conditions in Uzbekistan, Gafurova has failed "to demonstrate the '*individualized*' fear of persecution required for asylum." *Harchenko*, 379 F.3d at 410 (emphasis added).

The administrative record supports the Board's finding that Gafurova "is [not] similarly situated with these individuals" subject to persecution because these documents "show that there have been extradition requests by the Uzbek government regarding these individuals, and the Uzbek government had an interest in seeking the return of these individuals." A.R. at 5. The evidence in the record demonstrates that the persecuted asylum-seekers were those subject to extradition requests or asylum-seekers claiming religious persecution.[2] Without more, we are not persuaded that Gafurova is similarly situated to the individuals identified in her "new" evidence. The Board's conclusions are supported by substantial evidence in the record, and thus, the Board did not abuse its discretion.

Because we have decided that the Board did not err in concluding that Gafurova failed to submit new evidence evincing a material change in country conditions, we need not reach Gafurova's remaining argument that the Board erred in its determination that she did not demonstrate that she was prima facie eligible for asylum, withholding of removal, or protection under the Convention Against Torture.

---

[2]In November 2016, the Board denied Gafurova's request for a second asylum application, which was based in part on fear of religious persecution. In her motion to reopen filed in February 2017, she did not argue that her alleged new evidence of changed-country conditions supports reopening her asylum application on religious persecution grounds. Because the religious persecution argument was not presented to the Board below and was only raised in Gafurova's reply brief, it is forfeited for purposes of our review. *See Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004); *Dume v. Ashcroft*, 102 F. App'x 929, 930 (6th Cir. 2004).

III.

Gafurova also asserts an underdeveloped argument that the Board "erred in implying Gafurova had a burden to seek protection from the Second Circuit [against publication of her petition for review] back in 2011." Pet'r Br. at 33. We note that Gafurova has not challenged the Board's underlying conclusion that the Second Circuit did not breach her right to have her asylum application information remain confidential under 8 C.F.R. §§ 208.6, 1208.6[3] by publishing her petition for review and in turn, disclosing it to third parties. Also, even if there were a breach, Gafurova has not challenged the Board's decision on the ground that it erred by refusing to consider the alleged breach as a discretionary factor to favor the reopening of her removal proceeding. Bereft of factual and legal support, Gafurova has not properly developed this argument. Absent additional argumentation, we cannot guess how the Board erred in this determination or what remedy Gafurova seeks stemming from the Board's alleged error. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995))). Thus, we hold that Gafurova has forfeited this argument. *See Muncy v. G.C.R., Inc.*, 110 F. App'x 552, 558 (6th Cir. 2004); *McPherson*, 125 F.3d at 995–96.

IV.

Next, Gafurova argues that the Board erred when it concluded that her case was distinguishable from *Yousif v. Lynch*, 796 F.3d 622 (6th Cir. 2015). We do not agree that the Board committed error in this regard. In *Yousif*, we vacated the Board's denial of asylum "to reconsider and clarify its frivolousness finding." *Id.* at 635. We concluded that the Board erred in that case because it applied the incorrect standard of "materiality" when it viewed "Yousif's misrepresentations as 'material' merely because they were false and related to instances of past persecution, not because they had the potential to make a difference to the outcome of his asylum application." *Id.* at 634. Thus, on remand, the Board needed to determine and provide a

---

[3]8 C.F.R. §§ 208.6 and 1208.6 generally prohibit the disclosure to third parties of any information relating to an asylum application without the written consent of the applicant unless permitted by the listed exceptions or at the discretion of the Attorney General.

reasoned explanation whether the applicant's falsehoods materially affected his asylum application for both past and future persecution on the basis of his religion. *See id.* at 634–35. Here, Gafurova's case is notably different, as the Board previously reversed the Immigration Judge's frivolous asylum application finding. Gafurova has identified no specific evidence that her case is sufficiently analogous to *Yousif* to warrant the same outcome here as in that case, nor has Gafurova persuaded us that the Board erred in the application of our precedent to her case.

V.

Lastly, Gafurova raises the issue of whether her motion to reopen her removal proceeding was properly decided by a single Board member rather than by a three-member panel.

This court has not decided whether we have authority to review the Board's assignment of a single member rather than a three-member panel to decide a motion to reopen or a motion to reconsider. *See Djokic v. Sessions*, 683 F. App'x 385, 391–92 (6th Cir. 2017) (assuming without deciding that Board's assignment is subject to judicial review). This court also has not resolved the related issue concerning whether we may review the Board's determination to have a single member rather than a three-member panel review a direct appeal. *Gomez-Castillo v. Lynch*, 646 F. App'x 442, 443 (6th Cir. 2016) (per curiam) (declining to reach issue in direct appeal because underlying due process argument lacked merit); *Vasha v. Gonzales*, 410 F.3d 863, 875–76 (6th Cir. 2005) (assuming we may review direct appeal without deciding issue because petitioner was not prejudiced); *Denko v. INS*, 351 F.3d 717, 732 (6th Cir. 2003) (assuming assignment issue is subject to judicial review). We have, however, previously suggested that the Board's assignment of motions to reopen or reconsider to a single member, as opposed to a three-member panel, is a "discretionary" decision. *See Djokic*, 683 F. App'x at 393. We now explain why that suggestion is legally correct.

A.    The Board's assignment of a single member or a three-member panel to decide a motion to reopen or a motion to reconsider under 8 C.F.R. §§ 1003.1(e)(6) and 1003.2(i) is judicially reviewable.

The INA authorizes a court considering a final order of removal to review "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien." 8 U.S.C.

§ 1252(b)(9).  Thus, absent another statutory provision that divests us of jurisdiction, our default rule is that we have authority to review all questions of law and fact arising from a removal proceeding.  *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

The Administrative Procedure Act ("APA") carves out two instances in which an agency's action can be shielded from judicial review: if either (1) statutory law precludes judicial review or (2) the agency's action is "committed to agency discretion by law."  5 U.S.C. § 701(a); *Denko*, 351 F.3d at 731–32.  Neither exception applies here.  First, the Government has not pointed us to any statute that precludes judicial review.  Second, the relevant law governing the Board's decision as to the number of members to assign to decide a motion is not "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (citation omitted); *see also Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018).

The Attorney General has the statutory authority to "establish such regulations . . . and perform such other acts as the Attorney General determines to be necessary for carrying out" the immigration laws.[4]  8 U.S.C. § 1103(g)(2).  Pursuant to this delegation, and relevant here, the Attorney General promulgated 8 C.F.R. § 1003.2(i), which governs motions to reopen and motions to reconsider a Board decision.  The regulation states in relevant part:

> Rulings upon motions to reopen or motions to reconsider shall be by written order.  Any motion for reconsideration or reopening of a decision issued by a single Board member will be referred to the screening panel for disposition by a single Board member, unless the screening panel member determines, in the exercise of judgment, that the motion for reconsideration or reopening should be assigned to a three-member panel under the standards of § 1003.1(e)(6).

8 C.F.R. § 1003.2(i).  Under a plain reading of the regulation, an asylum-seeker's motion to reopen or motion to reconsider will be decided by a single Board member "unless" the screening panel determines that the motion "should be assigned to a three-member panel under the standards of § 1003.1(e)(6)." *See* 8 C.F.R. § 1003.2(i).  Thus, § 1003.2(i) incorporates

---

[4]Specifically, Congress charged the Attorney General with "such authorities and functions under this [Act] and all other laws relating to the immigration and naturalization of aliens as were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to the Executive Office for Immigration Review." 8 U.S.C. § 1103(g)(1).

§ 1003.1(e)(6) by reference and guides the screening panel member's judgment to use either a single Board member or a three-member panel to decide the motion.

> Section 1003.1(e)(6) states:
>
> Cases may only be assigned for review by a three-member panel if the case presents one of these circumstances:
>
> (i) The need to settle inconsistencies among the rulings of different immigration judges;
> (ii) The need to establish a precedent construing the meaning of laws, regulations, or procedures;
> (iii) The need to review a decision by an immigration judge or the [Immigration and Naturalization] Service that is not in conformity with the law or with applicable precedents;
> (iv) The need to resolve a case or controversy of major national import;
> (v) The need to review a clearly erroneous factual determination by an immigration judge; or
> (vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).

8 C.F.R. § 1003.1(e)(6).

We have jurisdiction to decide whether the Board complied with these regulations in this case because "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec. Admin.*, 378 F.3d 541, 545 (6th Cir. 2004); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Thus, we hold that a federal court may review the Board's determination to use a single member or three-member panel to decide a motion to reopen or motion to reconsider under 8 C.F.R. § 1003.1(e)(6) and 8 C.F.R. § 1003.2(i) to the extent that the Board adheres or departs from those regulations.

We recognize that there is a split among our sister circuits regarding whether the Board's determination to decide an appeal by a single member rather than by a three-member panel is immune from judicial review. *Compare Cantu-Delgadillo v. Holder*, 584 F.3d 682, 690–91 (5th Cir. 2009) (per curiam) (immune from review); *Kambolli v. Gonzales*, 449 F.3d 454, 461–65 (2d Cir. 2006) (per curiam) (same); *Bropleh v. Gonzales*, 428 F.3d 772, 779 (8th Cir. 2005) (same), *with Quinteros-Mendoza v. Holder*, 556 F.3d 159, 162–64 (4th Cir. 2009) (not immune from

review); *Purveegiin v. Gonzales*, 448 F.3d 684, 691–92 (3d Cir. 2006) (same); *Batalova v. Ashcroft*, 355 F.3d 1246, 1252–53 (10th Cir. 2004) (same).  We join our sister circuits that have held that this determination by the Board is judicially reviewable.  This is not a situation in which Congress has divested us of jurisdiction; in fact, as noted, the INA clearly authorizes our review of "all questions of law and fact" in removal proceedings, see 8 U.S.C. § 1252(b)(9), and the number of Board members assigned to decide a motion to reopen or reconsider, we believe, is an issue that is one of those "questions of law."  Furthermore, there is a "meaningful standard against which to judge the agency's exercise of discretion," *Lincoln*, 508 U.S. at 191—namely, the requirements of 8 C.F.R. § 1003.1(e)(6) and 8 C.F.R. § 1003.2(i).  To be sure, as explained below, the Board's range of discretion under those regulations is broad, but the wide latitude enjoyed by the Board does not divest us of jurisdiction to review the Board's decision.

B.      The Board did not abuse its discretion when it determined to decide Gafurova's motion using a single member.

We now turn to whether the Board abused its discretion in making its assignment decision.  As noted, under 8 C.F.R. § 1003.2(i), "[a]ny motion for reconsideration or reopening of a decision issued by a single Board member" is to "be referred . . . for disposition by a single Board member, unless the screening panel member determines, in the exercise of judgment, that the motion . . . should be assigned to a three-member panel under the standards of [8 C.F.R.] § 1003.1(e)(6)."  8 C.F.R. § 1003.2(i).  This regulation thus directs us to consider § 1003.1(e)(6) also when determining what the standards are for assignment to a three-member panel.  Section 1003.1(e)(6) clarifies those standards when it states that "[c]ases may only be assigned for review by a three-member panel if the case presents one of" six enumerated "circumstances," which were listed earlier.

Reading 8 C.F.R. §§ 1003.1(e)(6) and 1003.2(i) together, we conclude that the screening panel member has wide discretion in determining whether to assign to a single member or a three-member panel to adjudicate a motion to reopen or a motion to reconsider.  This discretion is limited only if the screening panel member makes a three-member panel assignment.  The power to assign to a three-member panel to decide a motion to reopen or a motion to reconsider is circumscribed because § 1003.1(e)(6) provides that a three-member panel "may ***only*** be

assigned" if one or more of the enumerated "circumstances" exist. 8 C.F.R. § 1003.1(e)(6) (emphasis added). In contrast, there is no such restriction when a screening panel member decides to assign the motion for decision by a single Board member. The single-member assignment may be made for any stated reason. In fact, a single member may be assigned for no stated reason at all.

And that is precisely what happened in this case. Gafurova's motion was assigned to a single member, and the Board summarily denied her request for a three-member panel in a single sentence of its decision: "The respondent's requests for oral argument and for review by a three-Board Member panel are denied." A.R. at 3. Despite the lack of any explanation for why Gafurova's request was denied, the Board did not abuse its discretion because its assignment of a single member was consistent with the requirements of its internal operating rules.[5]

Gafurova argues, however, that the phrase "in the exercise of judgment" in § 1003.2(i) indicates that the decision to assign a motion to a single member is not committed to the agency's discretion. Pet'r Br. at 29, 31. In support, Gafurova also notes the difference in language between §§ 1003.2(i) and 1003.1(e)(6): whereas § 1003.2(i) uses the word "standards," § 1003.1(e)(6) uses the word "circumstances." According to Gafurova, the difference in word choice is significant because the word "circumstances" triggers the agency's discretionary judgment but the word "standards" does not.

We are not persuaded by these arguments. The phrase "Exercise of Judgment" is defined as "[t]he use of sound discretion—that is, discretion exercised with regard to what is right and equitable rather than arbitrarily or willfully." "Exercise of Judgment," *Black's Law Dictionary* (7th ed. 1999); *see also* "Exercise of Judgment," *Black's Law Dictionary* (6th ed. 1990) ("Exercise of sound discretion, that is, discretion exercised, not arbitrary or willfully, but with

---

[5]Nothing in our holding should be construed to apply to our review of the *merits* of decisions of an Immigration Judge "that are not 'correct,' 8 C.F.R. § 1003.1(e)(4), are based on 'a clearly erroneous factual determination by an immigration judge,' 8 C.F.R. § 1003.1(e)(6)(v), are not in 'conformity with the law,' 8 C.F.R. § 1003.1(e)(6)(iii), or which for any other reason may have merited three-member panel review by the BIA." *Kambolli*, 449 F.3d at 464. We may "protect the substantive rights of applicants," but "[i]t is not the role of the federal courts to dictate the internal operating rules of the BIA." *Id.* at 464–65 (footnote omitted).

regard to what is right and equitable."). That definition necessarily entails that, contrary to what Gafurova argues, the "exercise of judgment" is a discretionary decision.

Likewise, we disagree with Gafurova's argument that use of the word "circumstances" in § 1003.1(e)(6) implies more of a discretionary decision than does the word "standards" in § 1003.2(i). *Compare* "Circumstance" *Black's Law Dictionary* (7th ed. 1999) ("An accompanying or accessory fact, event, or condition, such as a piece of evidence that indicates the probability of an event."); "Circumstance," *The American Heritage Dictionary of the English Language* (4th ed. 2000) ("A condition or fact that determines or must be considered in the determining of a course of action."); "Circumstance" *Random House Unabridged Dictionary* (2d ed 1993) ("[A] condition, detail, part, or attribute, with respect to time, place, manner, agent, etc., that accompanies, determines, or modifies a fact or event; a modifying or influencing factor."), *with* "Standard," *Black's Law Dictionary* (7th ed. 1999) ("A criterion for measuring acceptability, quality, or accuracy . . . ."); "Standard," *The American Heritage Dictionary of the English Language* (4th ed. 2000) ("An acknowledged measure of comparison for quantitative or qualitative value, a criterion."); "Standard," *Random House Unabridged Dictionary* (2d ed 1993) ("[A] rule of principle that is used as a basis for judgment."). Rather than view "circumstances" as contrary to "standards," we see each word as acting in complement to the other: the pertinent "circumstances" under which a three-member panel may be assigned under § 1003.1(e)(6) are part of the "standards" to govern the discretionary determination under § 1003.2(i).[6]

Finally, Gafurova's interpretation is not persuasive because, by her admission, it depends on an alteration of the plain text of § 1003.2(i). Gafurova argues that "if as a matter of judgment (not discretion) one of the standards of [§ 1003.1(e)(6)] is met, then a 3-member panel *should* (NOT 'may') decide the case." Pet'r Br. at 30 (bold and italics added). But nowhere in the relevant regulatory text does the word "should" appear. The word "may" in § 1003.1(e)(6)

---

[6]We note that not all of the "circumstances" listed in § 1003.1(e)(6) may be applicable to a motion to reopen or reconsider. For example, § 1003.1(e)(6)(vi)—which concerns "[t]he need to *reverse* the decision of an immigration judge or the Service" (emphasis added)—may not apply to a motion to reopen, which technically is not reversing any decision. It is perhaps because not all of the "circumstances" of § 1003.1(e)(6) may be relevant to motions to reopen or reconsider that § 1003.2(i) directs that the three-panel assignment decision be made "under the *standards* of § 1003.1(e)(6)" (emphasis added) rather than "under the *circumstances* of § 1003.1(e)(6)" (emphasis added). The latter wording might imply that all of the "circumstances" of § 1003.1(e)(6) could potentially be applicable to a motion to reopen or reconsider when, in fact, that may not be so.

continues to mean "may" and does not instantly transform its meaning into "should" because it is incorporated by reference in § 1003.2(i).

Accordingly, we hold that the Board adhered to its procedure when it assigned a single member rather than a three-member panel to decide Gafurova's motion.

## VI.

For the reasons set forth above, we deny Gafurova's petition for review.