NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  20a0054n.06

Case No. 19-3499

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 27, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MODY SOUMARE, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| WILLIAM P. BARR, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |

BEFORE:  GUY, SUTTON, and GRIFFIN, Circuit Judges.

SUTTON, Circuit Judge.  The United States denied Mody Soumare asylum and related relief in 2014, and ordered him removed.  Four years later, he sought to reopen his case.  An immigration judge denied his request, and the Board affirmed.  We deny his petition for review.

Born in Mauritania in 1975, Soumare illegally entered the United States around 2000. Soumare applied for asylum and related relief, claiming that he feared race-based persecution on account of his African ancestry.  An immigration judge denied Soumare's application.  The judge concluded that, while Soumare had been persecuted on account of his race in the past, conditions in Mauritania had improved such that he was not likely to be persecuted if he returned.  Soumare did not appeal, and the removal order became final in 2014.

Four years later, the government detained Soumare to prepare to remove him.  He filed a motion to reopen his case.  Well past the 90-day limit for such motions, Soumare argued that an

exception for changed country conditions applied. In asylum cases, "[t]here is no time limit on the filing of a motion to reopen" if the motion is based on previously unavailable and material evidence of "changed country conditions." 8 U.S.C. § 1229a(c)(7)(C)(ii). Soumare claimed that conditions for Black Mauritanians had materially worsened since 2014. An immigration judge disagreed. Acknowledging that Black Mauritanians continue to experience discrimination, the judge reasoned that that was just as true in 2014. The Board affirmed.

We review the Board's decision and consider the immigration judge's reasoning to the extent the Board adopted it. *Al-Saka v. Sessions*, 904 F.3d 427, 430 (6th Cir. 2018). To succeed on appeal, Soumare must show that the Board abused its discretion. *Gafurova v. Whitaker*, 911 F.3d 321, 325 (6th Cir. 2018). That requires us to find that the Board's decision lacked a "rational explanation," "inexplicably departed from established policies," or "rested on an impermissible basis." *Id.*

To sidestep the 90-day bar for motions to reopen, the applicant must introduce previously unavailable and "material" evidence of "changed country conditions." 8 U.S.C. § 1229a(c)(7)(C)(ii). To be "material," the new evidence must make a difference to the asylum claim. *Gafurova*, 911 F.3d at 326. That means Soumare must show with "reasonabl[e] specific[ity]" how the changed country conditions would affect him if he returned. *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004).

Soumare does not point to a specific change in conditions in Mauritania. His claim is more general—that the government ramped up discrimination and other forms of mistreatment against Black Mauritanians in recent years.

But the Board had a "rational explanation" for concluding otherwise. *Gafurova*, 911 F.3d at 325. It compared the 2013 State Department country report on Mauritania with the one from

2017. While both reports paint a troubling picture of ongoing discrimination and mistreatment of Black Mauritanians, they both show, as the Board found, that things have not materially changed since the 2014 denial of Soumare's asylum claim. The introductions to each report illustrate the point. Consider the human rights problems identified in 2013: "the use of torture by police to extract confessions, continuing slavery and slavery-related practices . . . . harsh prison conditions, abusive treatment in detention facilities . . . . [and] racial and ethnic discrimination." AR 434. Now consider the problems identified in 2017: "torture by law enforcement officers; harsh, overcrowded, and dangerous prison conditions . . . continuing slavery, and slavery-related practices . . . [and] racial and ethnic discrimination by government actors." AR 184. That is more continuity than change.

Digging deeper into the reports does not alter this conclusion. Most of the changes in the 2017 report amount to examples of broader problems that had existed for a long time, such as abused prisoners, or politically-motivated arrests. Some evidence in fact suggests that matters have improved. In 2015 Mauritania enacted a stricter anti-slavery law, established anti-slavery courts, and began prosecuting violators. The country also enacted a law targeting torture in places like prisons and established an agency to enforce the law. The reports overall paint a picture of conditions for Black Mauritanians that have not materially worsened and in some instances have improved. The Board did not abuse its discretion in rejecting Soumare's claim.

Soumare challenges this conclusion on the ground that the State Department reports were "non-specific" and "out-of-date." Pet. Br. 13. But State Department reports remain "the best source of information on conditions in foreign nations," and the Board does not abuse its discretion by invoking them. *Sterkaj v. Gonzales*, 439 F.3d 273, 276 (6th Cir. 2006) (quotation omitted). That the reports discuss overall country conditions may make them "non-specific."

But it also makes them more relevant about whether conditions have changed. The Board did not err in relying on the most recent State Department report available, which the federal government endorsed and which targeted overall country conditions in Mauritania.

Soumare claims that declarations from experts on Mauritania and a variety of news articles require a different conclusion. But the Board permissibly found that this evidence added little to the equation and did not overcome the State Department reports. Most of Soumare's evidence summarizes recent examples of governmental misconduct without explaining how they show changed conditions. His expert declarations, for instance, mention individuals deported from the United States to Mauritania who were arrested and imprisoned in harsh conditions. But these declarations do not indicate that this is a new practice. According to the State Department, "harsh and life threatening" prison conditions in Mauritania are not new. AR 436. Soumare also points to recent imprisonments of journalists and political activists. Even if these anecdotes amounted to changed conditions (he never tells us), that change would not be material to Soumare's case because he is not a journalist or a political activist. 8 U.S.C. § 1229a(c)(7)(C)(ii).

Soumare adds that the Board's "role in reviewing a motion to reopen is like a trial court's role in reviewing a motion for summary judgment," and therefore it "must accept as true reasonably specific facts proffered by an alien in support of a motion to reopen unless it finds those facts to be inherently unbelievable." *Trujillo Diaz v. Sessions*, 880 F.3d 244, 252 (6th Cir. 2018); *see also Pablo Lorenzo v. Barr*, No. 18-3606, 2019 WL 4065442, at *5–6 (6th Cir. July 9, 2019). But the credibility of his evidence did not make a difference in the Board's analysis. His evidence failed because it showed a continuation of old problems, not a material change in country conditions. Whether Soumare's evidence was "inherently unbelievable" or assumed to

be true, he would have lost anyway. We are skeptical at any rate about *Trujillo*'s relevance here. The decision did not concern changed country conditions. And we have never required the Board to assume the truth of a noncitizen's evidence of changed county conditions in a published decision. *See Zhang v. Mukasey*, 543 F.3d 851, 853–55 & n.3 (6th Cir. 2008). We see no good reason to start now.

Soumare tries to introduce new evidence on appeal: news articles covering the Mauritanian government's crackdown on protesters, a U.S. presidential press release condemning slavery in Mauritania, and the most recent 2018 State Department report. Much of this evidence suffers from the same flaws as the evidence he properly presented to the Board. More to the point, the submissions come too late. It is textbook administrative law that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). Immigration law is no different. *See* 8 U.S.C. § 1252(b)(4)(A); *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009).

Soumare's next-to-last argument—that *Chevron* deference does not apply—fares no better. *Chevron v. NRDC*, 467 U.S. 837 (1984). Nothing in the Board's analysis or ours rests on an issue of statutory interpretation, leaving no role for *Chevron* to play.

That leaves one last loose end. Soumare also seeks reopening to pursue claims for withholding of removal and protection under the Convention Against Torture. But he offers no good reason to treat these claims differently from his asylum claim. He offers no reason at all with respect to withholding, never mentioning it in his briefs. As for the claim under the Convention Against Torture, he briefly points out that the law has "no requirement to show nexus [between] a protected group" and potential torture. Pet. Br. 22; *see Almuhtaseb v.*

*Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006). "Nexus" or not, his claim fails anyway. He has not shown any material change in the conditions in Mauritania that would increase the risk that he would face torture upon his return.

We deny the petition for review.