NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0286n.06

Case No. 20-3540

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 11, 2021
DEBORAH S. HUNT, Clerk

TAREK SULEIMAN,

 Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

 Respondent.

)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

BEFORE: SUTTON, Chief Judge; McKEAGUE, and DONALD, Circuit Judges.

SUTTON, Chief Judge. Tarek Suleiman has been subject to removal from the United States since 1990. In 2019, Suleiman moved the Board of Immigration Appeals to reopen his case for the fourth time. The Board denied Suleiman's motion. We deny his petition for review of this last decision.

Born in Iraq, Suleiman legally immigrated to the United States in 1974. In 1990, after Suleiman committed armed robbery and felonious assault, the government ordered that he be deported. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). The Immigration Judge held a hearing and denied Suleiman's request to waive his removal. Suleiman appealed to the Board, which dismissed the appeal as untimely.

Over the next thirty years, Suleiman filed various motions and appeals seeking relief from his removal order. Most recently, in August 2019, Suleiman filed his fourth motion to reopen his

case. He claimed that his removal should be deferred under the Convention Against Torture, 8 C.F.R. §§ 1208.16–18, which prohibits the government from removing noncitizens to a country where they are likely to be tortured. As in previous motions, Suleiman claimed that, if he returned to Iraq, he would face torture prompted by his Chaldean Christian religion. Suleiman also stated that conditions in Iraq had deteriorated since he filed his last motion. The Board found that Suleiman failed to prove that he faced a particularized threat of torture in Iraq and denied his fourth motion to reopen on the basis of failure to show changed country conditions in his home country.

Noncitizens usually have just one shot at reopening removal proceedings. They normally must file a motion to reopen within 90 days of a removal order. 8 U.S.C. § 1229a(c)(7)(A), 1229a(c)(7)(C)(i). But those limits do not apply if the noncitizen seeks to reopen his case based on previously unavailable and material evidence of "changed country conditions." *Id.* § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii). Suleiman sought to invoke this exception, arguing that conditions for Iraqi Chaldean Christians have worsened since he last tried to reopen his case. The Board disagreed. It also found that, even if conditions had changed, Suleiman's evidence would not qualify for relief under the Convention Against Torture.

We review the denial of a motion to reopen for abuse of discretion. *Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018). The Board abuses its discretion if its decision lacks a "rational explanation," "inexplicably depart[s] from established policies," or "rest[s] on an impermissible basis such as invidious discrimination." *Gafurova v. Whitaker*, 911 F.3d 321, 325 (6th Cir. 2018) (quotation omitted).

The Board did not exceed its discretion. Suleiman's motion to reopen did not trigger the exception for late or successive motions because his evidence, mostly general news articles, does not show that conditions in Iraq have materially changed since Suleiman's last motion to reopen.

2

The articles and other evidence show only that the country has struggled with violence, political unrest, and religious tension for years. Even Suleiman acknowledges that there has been more continuity than change in Iraq in this respect, describing the arguments in his most recent motion as "largely identical to [his] last filing." AR 28. Confirming the point, almost a third of the submitted articles and reports were published *before* Suleiman filed his last motion to reopen and presumably were available to him then. All in all, the Board's conclusion that the evidence was "the same as and cumulative of evidence previously submitted and considered" did not sink to an abuse of discretion. AR 4.

On top of that, the Board gave another independent reason for denying Suleiman's motion to reopen. Even with the new evidence all considered, Suleiman still did not qualify for relief under the Convention Against Torture. *See INS v. Abudu*, 485 U.S. 94, 104 (1988).

To obtain protection under the Convention, noncitizens must prove it is "more likely than not" that they will suffer torture "with the consent or acquiescence of[] a public official" if sent back to their homeland. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). The petitioner must show a particularized threat of torture. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006). The Immigration Judge considers "(1) evidence of past torture inflicted upon the applicant; (2) evidence that the applicant can relocate to a part of the country of removal where he is not likely to be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal; and (4) other relevant information regarding conditions in the country of removal" in order to assess the risk of future torture. *Mapouya v. Gonzales*, 487 F.3d 396, 414–15 (6th Cir. 2007). This Court reverses the Board's decision only if it is "manifestly contrary to law" and the record evidence "not only supports a contrary conclusion, but indeed compels it." *Amir v. Gonzales*, 467 F.3d 921, 924 (6th Cir. 2006) (quotation omitted).

Although Suleiman's stack of articles includes a few that discuss discrimination and mistreatment of Christians in Iraq, none documents mistreatment rising to the level of torture. The Board thus did not abuse its discretion in holding that Suleiman did not show that it was likely he would be tortured upon return to Iraq.

Suleiman protests that his evidence establishes "a great ongoing pattern of life threatening circumstances to [him]" and "an increase in direct threat to the Chaldean community." Petitioner's Br. 7, 15. But most of the evidence shows only general ongoing violence and political unrest in Iraq. The evidence that purports to be more specific to his situation is not on point. An expert report that says Iraq is dangerous for those returning from the United States, for example, does not mention examples of violence against Chaldean Christians. The report recognizes that, to the extent the Iraqi government has a "track record of failing to protect its minority citizens, including Christians," that record "has not changed dramatically" since "the defeat of ISIS in late 2017." AR 253. Another piece of evidence, a news article, explains that local militias have "extorted Christian families and seized their property." AR 283. That is deplorable, to be sure. Yet extortion and property seizure do not qualify as torture. *See* 8 C.F.R. § 1208.18(a). Suleiman failed to demonstrate evidence of a *particularized* risk of future torture in Iraq or that the government would consent to or acquiesce in his torture. *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010); *see also* 8 C.F.R. § 1208.18(a)(1).

The record, in brief, does not support Suleiman's contention that changed conditions in Iraq qualify him for relief under the Convention Against Torture.

We deny the petition for review.

4